CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for RKo
DEC 21 2010
JULIA C. DUDLEY, CLERK
BY: HMcL...
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTOPHER C. MOORE, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OFFICER J. BOGGS, et al., ) <br> Defendants. ) | Civil Action No. 7:10-cv-00258 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Jackson L. Kiser <br> Senior United States District Judge |

Christopher C. Moore, a federal inmate proceeding pro se, filed a civil rights complaint pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), with jurisdiction vested in 28 U.S.C. § 1331. Plaintiff names as defendants Correctional Officers Boggs and Brown, Captain Wilson, and Special Investigation Agent Pitts, who are the "correctional defendants", and Regional Director C. Eichenlaub. Plaintiff alleges that the defendants conspired to lodge a fraudulent charge of assaulting staff against him. The correctional defendants filed a motion for summary judgment, and plaintiff responded, making the matter ripe for disposition. After reviewing the record, I grant the correctional defendants' motion for summary judgment and dismiss without prejudice the claim against Eichenlaub for failing to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).

I.

A.

Plaintiff alleges the following facts in his verified complaint. While incarcerated at the United States Penitentiary in Lee County, Virginia ("USP Lee"), Officer Boggs fabricated an incident report against plaintiff, charging him with assaulting Boggs. Plaintiff further alleges the other named defendants committed perjury, conspired to cover up this alleged false incident report, and falsified documents related to the report. Plaintiff also claims he received a lump

near his left eye from when Brown twice slammed his head against the wall, and claims he suffered mental and physical stress from being placed in the Special Housing Unit ("SHU"). Plaintiff alleges that Wilson refused to talk with him about the case, R. Pitt was involved in the investigation with the FBI, and Eichenlaub responded to his administrative grievance. Plaintiff requests as relief to be released from the SHU, for the defendants to be disciplined, and to receive compensatory and punitive damages.

B.

The correctional defendants state the following facts in support of their motion for summary judgment. On December 3, 2009, at USP Lee at around 8:00 a.m., defendant Boggs, an Education Technician, turned the corner in the Education Department hallway adjacent to the West Corridor. At that time, plaintiff said something incoherent to him. Boggs responded by saying, "What?" Plaintiff began a verbal tirade about how everybody had an attitude. As a result of plaintiff's reaction and to maintain order within the penitentiary, Boggs ordered plaintiff to go to the Lieutenant's office. Each time Boggs ordered plaintiff to go to the Lieutenant's office, plaintiff would state, "I'm not going anywhere!"

Boggs then attempted to escort plaintiff to the Lieutenant's office, at which point plaintiff wheeled around to face Boggs, pushed him backwards, and kicked him in the right knee. Boggs immediately fell to the ground. At this point, defendant Brown, an Education Teacher who had observed this assault, immediately gave plaintiff an order to get on the ground, which plaintiff refused. Brown used physical force to gain control of plaintiff, placed him face down on the ground, and applied hand restraints. Brown and another staff member then escorted plaintiff to the Lieutenant's office. Plaintiff was very aggressive and resistant while he was being escorted

2

to the Lieutenant's office and while being placed in the holding cell. USP Lee medical staff assessed Boggs and plaintiff for injuries. Plaintiff denied any medical issues, complaints, or injuries at that time he was medically assessed. Medical staff noted that plaintiff had an abrasion on his left wrist and bruising with an abrasion above his left eyebrow. Boggs was transported to a local hospital because of the knee injury, and he has remained out of work because of his permanent knee injury he received from the assault.

Plaintiff was charged with violating Code 101, Serious Assault. The incident report is currently suspended pending the referral of plaintiff's assault on Boggs to the FBI for investigation and possible criminal prosecution. Once any possible criminal charges against plaintiff are resolved, the incident report will be released for institutional processing.

II.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[1] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325

---

[1] The parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

3

(1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

A.   Plaintiff failed to exhaust administrative remedies for some claims.

The correctional defendants argue that plaintiff did not exhaust administrative remedies for his claims about Brown twice slamming his head into a wall and for the defendants' conspiracy and perjury.[2] In response, plaintiff argues that his last sentence on the appeal form to the BOP's General Counsel, which states, "Afterward, should [sic] reprimand the staff and staffs for lying, creating a lied [sic], and writing a bogus incident report[] against me," constitutes exhaustion of his conspiracy and perjury claims. (Pl.'s Resp. to Corr. Def.'s Mot. Summ. J. (no. 32) Ex. E.)

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available administrative remedies before bringing a claim under 42 U.S.C. § 1983, even where the relief sought cannot be granted by the administrative process. 42 U.S.C. § 1997e(a). See Woodford v. Ngo, 548 U.S. 81, 85 (2006) (stating that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); Porter v. Nussle, 534 U.S. 516, 532 (2002) (stating that the PLRA applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth v. Churner, 532 U.S. 731, 739 (2001) (finding that the PLRA requires administrative exhaustion prior to the filing of a federal civil rights suit even if the form of relief the inmate seeks is not available through exhaustion of administrative remedies). Pursuant to the PLRA, prisoners must not just

---

[2]The correctional defendants acknowledge that plaintiff exhausted his administrative remedies for claims about the fabricated incident report. However, the correctional defendants argue that I should dismiss the action without prejudice because plaintiff exhausted the claims shortly after filing this action in June 2010 and that § 1997e(a) requires exhaustion before filing. However, to dismiss this action without prejudice at this juncture for failing to exhaust before filing would require the parties to resubmit essentially the same pleadings, wasting scarce judicial resources. Because plaintiff actually exhausted his claim about the fabricated incident report, I will consider the claim in this action.

initiate timely grievances, but must also timely appeal through all levels of available administrative review any denial of relief. Woodford, 548 U.S. at 93 (holding that the PLRA requires "proper exhaustion" of institutional administrative remedies before filing any federal suit challenging prison conditions). To properly exhaust a claim, an inmate must file grievances with sufficient detail to alert prison officials of the possible constitutional claims which are now alleged as a basis for relief. See Smith v. Rodriguez, No. 7:06-cv-00521, 2007 U.S. Dist. LEXIS 43571, 2007 WL 1768705 (W.D. Va. June 15, 2007) (citing McGee v. Fed. Bureau of Prisons, 118 F. App'x 471, 476 (10th Cir. 2004)). Failure to exhaust is an affirmative defense that defendant has the burden of pleading and proving. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005).

To fully exhaust a Bivens claim, a federal prisoner must properly raise his grievance through all levels of the BOP's Administrative Remedy Program. See 28 C.F.R. §§ 542.10, et seq. If unable to resolve his complaint informally, an inmate may file a formal written complaint on the proper form within twenty calendar days of the complained act. Id. § 542.14(a). If not satisfied with the warden's response, the inmate may file an appeal on the appropriate form to a regional director within twenty calendar days of a warden's response. Id. § 542.15(a). An inmate who is not satisfied with a regional director's response may file within thirty calendar days a final administrative appeal of a regional director's response on the appropriate form to the BOP's General Counsel. Inmates have not exhausted administrative remedies until they have filed their grievance to all levels. Id.

The record reveals that plaintiff did not file any administrative remedies regarding his claims that Brown slammed his head against the wall and that the defendants conspired or

perjured themselves. (Corr. Def.s' Ex. 1 ¶¶ 6-7.) Plaintiff's one sentence about staff's alleged lying for a later appeal is not of sufficient detail to alert prison officials about his specific claims of perjury or a conspiracy. Furthermore, plaintiff may not raise in an appeal issues not raised in the lower level filings and may not combine appeals of separate lower level responses into a single appeal. See 28 C.F.R. § 542.15(b)(2) (inmates cannot raise new issues on an appeal of another issue or consolidate issues into one appeal). Furthermore, the time has lapsed for plaintiff to file grievances about these specific issues. Accordingly, the correctional defendants are entitled to summary judgment because plaintiff failed to exhaust administrative remedies about the conspiracy, perjury, and head-knocking claims.

B.  The correctional defendants are entitled to qualified immunity.

The correctional defendants argue that they are entitled to qualified immunity because plaintiff fails to state a claim upon which relief may be granted. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). An official's conduct falls within his authority unless a reasonable official in the defendant's position would have known that the conduct was clearly established to be beyond the scope of that authority. In re Allen, 106 F.3d 582, 594 (4th Cir. 1997). To determine the scope of an official's authority, an analysis of the statutes or regulations controlling the official's duties is warranted. Id. at 595.

The correctional defendants' acts were not clearly beyond the scope of their respective authority. When staff witness or have reason to believe there has been a violation of BOP

regulations, an incident report will be issued. See Program Statement 5270.08, Inmate Discipline and Special Housing Units, Chapter 5, p. 1, available online at http://www.bop.gov/policy/progstat/5270_008.pdf.[3] As a result, Boggs was acting within the scope of his authority when he issued the incident report after plaintiff assaulted him. Furthermore, Brown acted within the scope of his authority to respond to a situation where another staff member needed assistance. See Program Statement 3420.09, Employee Conduct, p. 9, Section 10 (a) and (b), available online at http://www.bop.gov/policy/progstat/3420_009.pdf. Brown also acted within the scope of his authority to use immediate force and to apply restraints based upon Program Statement 5566.06. See Program Statement 5566.06, Use of Force and Application of Restraints, p. 3 and 4, available at http://www.bop.gov/policy/progstat/5566_006.pdf. Finally, Wilson and Pitt acted within their general supervisory positions to investigate assaults. (Corr. Def.s' Br. Supp. Mot. Summ. J. Ex. 1, Attch. H (Relevant Page of Position Description Captain), Attch. I (Relevant Page of Position Description Special Investigative Agent).)

To overcome qualified immunity, a plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993). However, a defendant may demonstrate that the right was not clearly established at the time of the incident to receive qualified immunity. Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007). Accordingly, in order to avoid summary judgment on the basis of qualified immunity, plaintiff must produce sufficient admissible evidence from which a jury could conclude that the defendants violated his First Amendment right to the free exercise of religion by the delay to

---

[3] Counsel for the defendants is advised to enter these Program Statements onto the docket at the time he files a motion and brief relying on them.

8

receive the diet and that the delay was a clearly established violation of constitutional law at the time of the violation. Whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (modified by Pearson v. Callahan, 129 S. Ct. 808 (Jan. 21, 2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first)).

Plaintiff's alleged facts fail to show that the correctional defendants' conduct violated plaintiff's constitutional rights. Plaintiff's claim that he was falsely accused fails to state a Bivens claim because "[t]he prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir.1986). See Farmer v. Brennan, 511 U.S. 825, 839-40 (1994) (finding that case law involving § 1983 claims is applicable in Bivens actions, and vice versa). A protected liberty interest in avoiding prison disciplinary sanctions can arise either from the Due Process Clause itself or from state law. Asquith v. Dep't of Corrections, 186 F.3d 407, 409 (3d Cir. 1999). The Due Process Clause applies only if the restraints at issue exceed the prisoner's sentence "in such an unexpected manner as to give rise to protection by the Due Process Clause of [their] own force" and do not violate any other constitutional provision. Sandin v. Conner, 515 U.S. 472, 484 (1995). Because disciplinary detention and "administrative segregation [are] the sorts of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," plaintiff's pre-hearing transfer to "less amenable and more restrictive quarters" does not implicate a liberty interest protected by the Due Process Clause. Hewitt v. Helms, 459 U.S. 460, 468 (1983). See, e.g., Brown v. Plaut, 327 U.S. App. D.C. 313, 131 F.3d 163 (D.C. Cir. 1997) (stating Heck's

favorable termination rule does not apply to prison disciplinary sanctions that affect only the conditions, and not the fact or duration, of a prisoner's confinement). Plaintiff fails to describe any atypical and significant hardship he experiences in the SHU, and he fails to establish any deprivation of a liberty interest. In this case, plaintiff acknowledges that he received a copy of the SHU detention order and an incident report. See 28 C.F.R. §§ 541.14, 541.22. Pursuant to 28 C.F.R. § 541.14(b), the institutional investigation about the alleged assault must be suspended until the FBI completes its investigation of the incident. Therefore, neither institutional hearings about the alleged incident nor interviews by institutional staff may occur until the FBI releases the investigation back to USP Lee staff. Accordingly, plaintiff fails to establish that the correctional defendants violated a constitutional right, and the correctional defendants are entitled to qualified immunity about the allegedly fabricated incident report.

C.    Plaintiff fails to state a claim against defendant Eichenlaub.

Similarly, plaintiff fails to state a claim upon which relief may be granted against defendant Eichenlaub. Plaintiff filed a grievance appeal to Eichenlaub to preserve "all the evidence" about the incident. Plaintiff merely complains that Eichenlaub, in his response, "created and add [sic] additional action toward officer(s) that was unfounded by the author of the alleged incident report, videotapes, and other documents." (Compl. 4.) Plaintiff's dissatisfaction with a response to a grievance appeal does not state a Bivens claim. Accordingly, plaintiff's claim against Eichenlaub is dismissed without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

III.

For the foregoing reasons, I grant the correctional defendants' motion for summary judgment and dismiss the claim against Eichenlaub without prejudice for failing to state a claim

10

upon which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to plaintiff and counsel of record for the defendants.

**ENTER**: This 21st day of December, 2010.

/s/ Jackson L. Kiser
Senior United States District Judge